IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY ANNETTE HART,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Civil Action No. 13-5<br>Electronically Filed |

**MEMORANDUM OPINION**

**I.    Introduction**

Plaintiff Amy Annette Hart ("Hart") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 8 & 10. For the reasons that follow, Hart's motion for summary judgment (*ECF No. 8*) will be denied, the Commissioner's motion for summary judgment (*ECF No. 10*) will be granted, and the final decision of the Commissioner will be affirmed.

**II.    Procedural History**

Hart protectively applied for SSI benefits on December 29, 2009, alleging that she had become "disabled" on October 1, 2003. R. 11, 119. Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application on March 29, 2010. R. 88. Hart responded on May 7, 2010, by filing a timely request for an administrative hearing. R. 95. On July 18, 2011, a

hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Leslie Perry-Dowdell. R. 39. Hart, who was represented by counsel, appeared and testified at the hearing. R. 41-58. Mary Beth Kopar ("Kopar"), an impartial vocational expert, also testified at the hearing. R. 58-62. In a decision dated October 14, 2011, the ALJ determined that Hart was not "disabled" within the meaning of the Act.[1] R. 8-20.

On December 12, 2011, Hart sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. 7. The Appeals Council denied the request for review on November 8, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. 1. Hart commenced this action on January 3, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-2. The parties filed cross-motions for summary judgment on April 22, 2013. ECF Nos. 8 & 10. Those motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention

---

[1] Hart has filed previous applications for benefits. The application immediately preceding the one at issue in this case was denied in an administrative decision dated March 29, 2009. R. 65-80. The ALJ treated the earlier denial as "final and binding" through that date. R. 11. In any event, SSI benefits are not payable for any period of time predating a claimant's application. *Torres v. Chater*, 125 F.3d 166, 171, n. 1 (3d Cir. 1997); 20 C.F.R. § 416.335. Since the instant application was not filed until December 29, 2009, that date marked the beginning of the disputed period of time. R. 11.

2

that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. The ALJ's Decision

In his decision, the ALJ determined that Hart had not engaged in substantial gainful activity subsequent to the date of her application. R. 13. Hart was found to be suffering from lumbar stenosis, fibromyalgia, major depressive disorder, asthma, fibroids, anemia, broken toes, migraine headaches, hand numbness, and pain and swelling in her left foot. R. 13. Her lumbar stenosis, fibromyalgia and major depressive disorder were deemed to be "severe" under the Commissioner's regulations. R. 13; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Hart's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14-15.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Hart's "residual functional capacity"[2] as follows:

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

5

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Claimant can lift 20 pounds occasionally and 10 pounds frequently, can walk six hours in an eight hour workday and sit six hours in an eight hour workday, can occasionally climb ramps and stairs, can occasionally balance, stoop, kneel, crouch and crawl, can perform simple, routine, repetitive tasks free of fast paced production environments, should be isolated from the public, and should have occasional supervision and occasional interaction with co-workers.

R. 15. Hart had "past relevant work"[3] experience as a daycare worker, head cook and cook. R. 18, 58. Kopar classified Hart's prior positions as "semi-skilled"[4] and "skilled"[5] jobs that had been performed at the "medium,"[6] "heavy"[7] and "very heavy"[8] levels of exertion. R. 58. Since Hart was deemed to be capable of performing only "unskilled"[9] work at the "light"[10] level of exertion, it was determined that she could not return to her past relevant work. R. 18.

---

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[5] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[8] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[9] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of

Hart was born on January 28, 1963, making her forty-six years old on her application date and forty-eight years old on the date of the ALJ's decision. R. 18, 43. She was classified as a "younger person" under the Commissioner's regulations.[11] 20 C.F.R. § 416.963(c). She had a high school education and an ability to communicate in English. R. 43, 139, 141; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Hart could work as a marker, cleaner or sorter. R. 19. Kopar's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[12] R. 59-60.

## V. Discussion

Hart suffers from major depressive disorder stemming from the murder of her sister in 1999. R. 379. Although Hart started to see a mental health counselor after her sister's death, the counselor later committed suicide. R. 379. The ALJ accommodated Hart's mental impairments by isolating her from the public, limiting her to occasional interaction with supervisors and co-workers, and restricting her to simple, routine, repetitive tasks that would not be performed in a fast-paced production environment. R. 15.

Records provided by Hart's treating physicians reveal that she suffers from back pain. R. 204. At the hearing, Hart testified that she had been suffering from chronic back pain since 2004. R. 45. On March 6, 2009, a magnetic resonance imaging ("MRI") scan was performed on Hart's lumbar spine. R. 275. The MRI scan revealed that Hart had mild to moderate central

---

arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[11] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

[12] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

7

canal stenosis at the L3-L4 level and moderate central canal and bilateral stenosis with central disc protrusion at the L4-L5 level. R. 275. On May 13, 2011, Dr. Edward K. Heres was unable to precisely diagnose the cause of Hart's pain. R. 594. It was noted that Hart's pain would increase with activities such as lifting, bending and twisting. R. 595. The ALJ addressed Hart's back impairment by limiting her to a range of "light" work involving only occasional postural maneuvers. R. 15.

The arguments advanced by Hart in support of her motion for summary judgment all relate to the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Kopar. ECF No. 9 at 8-13. A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony describes all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not conveyed to the vocational expert, there is a danger that he or she will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). The ALJ's hypothetical questions to Kopar made reference to every limitation contained in the subsequent residual functional capacity finding. R. 15, 58-59. Indeed, the ALJ described a person who could make only simple work-related decisions and tolerate only routine workplace changes even though those restrictions were subsequently discarded. R. 15, 59. Since the ALJ's hypothetical questions were overinclusive rather than underinclusive, Hart's challenge to the sufficiency of Kopar's testimony is more appropriately regarded as a direct attack on the underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

On March 22, 2010, Dr. Linda S. Rockey performed a consultative psychological evaluation of Hart in connection with her application for SSI benefits. R. 376-385. After completing the evaluation, Dr. Rockey reported that Hart had more than "moderate" (but less than "marked") limitations in her abilities to understand, remember and carry out detailed instructions, make judgments concerning simple work-related decisions, and interact appropriately with supervisors, co-workers, and members of the general public. R. 384. Hart was deemed to be "markedly" limited in her abilities to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. R. 384. Only "slight" limitations were identified with respect to Hart's abilities to understand, remember and carry out short, simple instructions. R. 384. In the portion of her narrative report summarizing the findings of the evaluation, Dr. Rockey stated as follows:

> At the present time, Ms. Hart is likely to have significant difficulty maintaining consistent employment on a daily basis owing to daily symptoms of chronic pain and difficulties with sustained ambulation. Ms. Hart is a very pleasant individual who relates well with others, [sic] however, owing to her symptoms of chronic pain, she is likely to have difficulty interacting with the public and other individuals in a work-related setting in addition to present self-consciousness and frequent sadness. Ms. Hart is likely to have moderate difficulty comprehending and completing complex work-related tasks, meeting deadlines, and adapting to change in a work environment secondary to a mild reduction in immediate verbal recall and a moderate to severe reduction in concentration observed on formal testing today.

R. 383. Dr. Rockey went on to state that Hart was "cognitively capable of handling her own finances" in the event that benefits were to be awarded. R. 383.

Dr. Edward Zuckerman, a non-examining psychological consultant, opined on March 26, 2010, that Hart was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." R. 408. Discussing Hart's work-related abilities and limitations, Dr. Zuckerman explained:

> The claimant can make simple decisions. She is able to carry out very short and simple instructions. She would not require special supervision in order to sustain a work routine. She is socially isolated. She is able to get along with others in the workplace without distracting them. She is self-sufficient. Additionally, she can sustain an ordinary routine without special supervision. She evidences some limitation in dealing with work stresses and public contact. There are no restrictions in her abilities in regards to understanding and memory.

R. 408. Dr. Zuckerman described Dr. Rockey's examination report as "an overestimate of the severity of [Hart's] functional restrictions." R. 408.

The ALJ accorded "no weight" to the portion of Dr. Rockey's examination report discussing Hart's physical limitations. R. 17. In determining Hart's physical capabilities, the ALJ gave some consideration to a March 23, 2010, assessment by Mary Diane Zelenak ("Zelenak"), a non-examining adjudicator, who had previously indicated that Hart had no physical restrictions. R. 17, 386-391. Acknowledging Hart's subjective complaints, the ALJ observed that the existence of "mild to moderate pain or discomfort" was not inherently "incompatible with the performance of sustained work activity." R. 16.

Hart testified that, as a cook, she had lifted objects weighing up to 250 pounds. R. 44. She also stated that, as a daycare worker, she had lifted children weighing up to sixty pounds. R. 44-45. Hart responded in the affirmative when asked whether she had experienced chronic back pain since 2004. R. 45. The ALJ concluded that while Hart's musculoskeletal problems provided a basis for inferring that she was experiencing pain and discomfort, they did not support a finding that she was precluded from performing "light" work. R. 17. An individual performing "light" work is expected to lift or carry no more than twenty pounds at a time. 20 C.F.R. § 416.967(b). Since the record contained objective evidence of medical conditions that could reasonably be expected to cause pain, the ALJ was required to give "serious consideration" to Hart's "subjective complaints of pain." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.

10

1993).  Nevertheless, the ALJ was not required to credit Hart's subjective complaints in every respect.  *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011).  The presence of pain does not invariably prevent an individual from engaging in "light" work activities.  *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

Hart argues that the ALJ committed reversible error in rejecting Dr. Rockey's opinion.  ECF No. 9 at 10-11.  Under the Commissioner's regulations, an opinion expressed by an examining source is ordinarily entitled to more weight than an opinion provided by a non-examining source.  20 C.F.R. § 416.927(c)(1).  In this case, however, Dr. Rockey appeared to base her opinion of disability on the existence of Hart's *physical* limitations.  R. 382-383.  In order to be "qualified" to perform a consultative examination, a consultative examiner must have the training and experience necessary to perform the specific type of examination or test requested by the SSA.  20 C.F.R. § 416.919g(b).  As a licensed psychologist, Dr. Rockey was qualified to assess Hart's *psychological* limitations.  Because Dr. Rockey is not a physician, her assessment of Hart's *physical* abilities and limitations did not constitute "medical evidence."  *Proper v. Apfel*, 140 F.Supp.2d 478, 483-484 (W.D.Pa. 2001).

Information provided by non-medical sources may be used to demonstrate the impact that established impairments have on a claimant's ability to work.  20 C.F.R. § 416.913(d).  Nonetheless, the ALJ was not required to accept Dr. Rockey's personal observations at face value.  On August 10, 2007, Dr. Juan Mari-Mayans opined that Hart was physically capable of engaging in a range of "light" work activities involving only occasional postural maneuvers.[13]  R. 183-189.  Dr. Mari-Mayans' assessment was prepared in connection with an earlier

---

[13] Hart contends that her impairments would preclude her from standing or walking for six hours over the course of an eight-hour workday.  ECF No. 9 at 9.  No physician has submitted a statement supporting Hart's assertion.  Dr. Mari-Mayans opined that Hart could sit, stand or walk for up to six hours per day.  R. 184.  In the absence of countervailing medical evidence, the ALJ was entitled to rely on Dr. Mari-Mayans' assessment.  *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

application for benefits filed by Hart, which was denied in an administrative decision dated March 24, 2009. R. 65-80. The evidence supporting the prior denial was incorporated within the ALJ's decision by reference. R. 16. The ALJ's residual functional capacity assessment was generally consistent with the opinion of Dr. Mari-Mayans. R. 15, 183-189.

The probative force of every opinion must be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). An assessment submitted by a non-examining consultant may be of little probative value when it is contradicted by assessments provided by treating and examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). In this case, however, no physician qualified to assess Hart's *physical* abilities and limitations has submitted an assessment that is more restrictive than that prepared by Dr. Mari-Mayans. Under these circumstances, it is beyond dispute that the ALJ had an adequate basis for concluding that Hart could perform "light" work. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Hart faults the ALJ for failing to account for some of her remaining impairments. ECF No. 9 at 9-10. As the patient seeking treatment from various healthcare providers, Hart was in the best position to provide information about her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The burden was on her to demonstrate that her impairments resulted in specific functional limitations. *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008). Even though she has previously been denied benefits, Hart has still not presented the Commissioner with assessments from her treating physicians detailing her functional limitations. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999)(recognizing that a claimant attempting to secure benefits under the Act should obtain

assessments from medical professionals describing his or her specific work-related restrictions). The mere existence of a medically determinable impairment does not establish the presence of a functional limitation. *Moore v. Barnhart*, 405 F.3d 1208, 1213, n. 6 (11th Cir. 2005). Although Hart testified that she used an albuterol inhaler to control her asthma, she did not present evidence suggesting that specific functional limitations resulted from that impairment. R. 49. No environmental limitations were identified by Dr. Mari-Mayans. R. 186. Consequently, the absence of an environmental limitation does not render the ALJ's residual functional capacity finding defective. R. 15.

The ALJ found some of Hart's impairments to be "non-severe" because they did not have more than a minimal effect on her ability to engage in work-related activities. R. 13. The standard applicable at the second step of the sequential evaluation process is relatively easy for a claimant to meet. *McCrea*, 370 F.3d at 360-361. In order to qualify as "severe," however, an impairment must last long enough to satisfy the Act's twelve-month durational requirement. 20 C.F.R. § 416.922(a). If a "non-severe" impairment results in a functional limitation of sufficient duration to satisfy that requirement, it must be factored into the residual functional capacity assessment. 20 C.F.R. § 416.945(a)(2).

Some of the impairments found to be "non-severe" appear to have been episodic in nature. For example, the ALJ listed fibroids and broken toes among Hart's "non-severe" impairments. R. 13. The Act's twelve-month durational requirement applies not only to a claimant's medically determinable impairments, but also to his or her alleged inability to work. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). In determining Hart's residual functional capacity, the ALJ was not required to account for functional limitations persisting for less than twelve months. 20 C.F.R. § 416.922(b). Treatment

records predating the relevant period of time by more than a year suggest that, at one point, Hart's back pain may have been worsened by prolong sitting. R. 206. In any event, Hart points to nothing in the record which suggests that any limitations in her ability to sit lasted long enough to affect the residual functional capacity analysis. Dr. Mari-Mayans reported that Hart could sit, stand or walk for up to six hours per day, and that assessment was incorporated within the ALJ's decision by reference. R. 16, 184. Since no physician qualified to assess Hart's physical capabilities has rendered a contradictory opinion, the ALJ acted reasonably in finding that Hart could perform the sitting, standing and walking abilities typically associated with "light" work. R. 17-18.

The record indicates that, in 2008, Hart experienced numbness and tingling in her hands. R. 224. At one point, her right hand was swollen, making it difficult for her to make a fist. R. 237. There was no decrease in the range of motion in her hands. R. 224. Hart testified that she frequently experienced numbness in her hands, and that she could not write or manipulate small objects for long periods of time. R. 46-47. When questioned by Hart's counsel, Kopar testified that constant hand numbness would compromise an individual's ability to work as a marker. R. 61-62. Hart testified that her treating physicians could not identify the cause of her numbness. R. 55. She acknowledged that, on a typical day, she was able to bathe and dress herself. R. 54. The ALJ was not required to credit subjective complaints that were neither attributed to a medical diagnosis nor consistent with Hart's self-described activities of daily living. *Chandler*, 667 F.3d at 363. Since Hart's complaints of disabling hand limitations were not deemed to be credible, Kopar's testimony discussing the employability of an individual with such limitations was inconsequential. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987).

Where a claimant relies on his or her obesity as a basis for seeking benefits and successfully establishes its existence as a "severe" impairment, an administrative law judge must expressly consider the effect that obesity has on the claimant's ability to work. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-505 (3d Cir. 2009). Hart maintains that the ALJ's failure to specifically discuss obesity in her decision necessitates a remand for further proceedings. ECF No. 9 at 10. When she applied for SSI benefits, Hart did not list obesity as an impairment affecting her ability to work. R. 140. Even at this stage, she does not explain the extent to which her obesity would compromise her ability to perform the duties of the jobs described by Kopar. ECF No. 9 at 10. Under these circumstances, the ALJ's failure to specifically discuss obesity in her decision provides no basis for setting that decision aside. *Rutherford*, 399 F.3d at 552-553.

Although Hart bases her motion for summary judgment on her *physical* impairments, it is worth noting that the *mental* limitations found by Dr. Rockey were reflected in the ALJ's residual functional capacity finding. The "marked" limitation in Hart's ability to respond appropriately to work pressures in a usual work setting was addressed by the restriction precluding work performed in fast-paced production environments.[14] R. 15, 384. Hart's concentration-related difficulties were accommodated by the limitations permitting the performance of only simple, routine, repetitive tasks. R. 15, 384. The ALJ accounted for Hart's interpersonal difficulties by restricting her to work involving only occasional interaction with supervisors and co-workers and no contact with members of the general public. R. 15, 384. Admittedly, the residual functional capacity assessment did not expressly address the "marked" limitation in Hart's ability to respond appropriately to changes in a routine work setting. R. 15,

---

[14] A claimant who is "markedly" limited in a given area is not completely precluded from functioning in that area. *Hansford v. Astrue*, 805 F.Supp.2d 140, 146, n. 5 (W.D.Pa. 2011).

384. At the hearing, however, the ALJ described an individual who could tolerate only routine workplace changes. R. 59. Kopar testified that the described individual could work as a marker, cleaner or sorter. R. 59-60. The Court is not required to order a remand based on inconsequential errors. *Rutherford*, 399 F.3d at 553. Since the ALJ's hypothetical questions accurately described Hart's limitations, the testimony given by Kopar established the existence of jobs in the national economy that could be performed by an individual with those limitations. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008).

## VI. Conclusion

The Commissioner's decision denying Hart's application for SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Hart's motion for summary judgment (*ECF No. 8*) will be denied, and the Commissioner's motion for summary judgment (*ECF No. 10*) will be granted. In accordance with the fourth sentence of § 405(g), the "final decision" of the Commissioner will be affirmed. An appropriate order will follow.

> s/ Arthur J. Schwab
> Arthur J. Schwab
> United States District Judge

cc:   All Registered ECF Counsel and Parties